UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
─────────────────────────────

HAYAT MASUDI and PALWASHA MASUDI,

                Plaintiffs,

    v.

MICHAEL STUART SHER; MIKEY HOLDINGS, INC.; MIKEY'S HOLDINGS; MIKEY'S HOLDINGS INC.; ARCBEST II, INC.; PANTHER II TRANSPORTATION INC. d/b/a/ PANTHER PREMIUM LOGISTICS; EXPEDITER SERVICES, LLC, and DOES 1–4,

                Defendants.

MEMORANDUM & ORDER
24-CV-01741 (NRM)

NINA R. MORRISON, United States District Judge:

    Plaintiffs Hayat Masudi ("Hayat") and Palwasha Masudi ("Palwasha"), proceeding *pro se*, bring this action against Defendants Michael Stuart Sher ("Sher"), Mikey's Holdings, Inc. ("Mikey's Holdings"), ArcBest II, Inc. ("ArcBest"), Panther II Transportation, Inc. ("Panther"), and Expediter Services, LLC ("Expediter"), alleging fraud, breach of contract, unjust enrichment, conversion, and claims under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691f, and the Truth in Lending Act, 15 U.S.C. §§ 1601–1667. ArcBest and Panther move to dismiss the claims against them for failure to state a claim. Defendant Expediter moves for judgment on the pleadings.

    For the reasons that follow, the Court grants both Defendants' motions with

1

prejudice.

# BACKGROUND

## I. Factual Background

The following facts come from Plaintiffs' second amended complaint ("SAC"), which the Court accepts as true for purposes of the instant motions. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993) (stating that in ruling on a motion to dismiss, the court "must accept as true all the factual allegations in the complaint"); *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim." (internal quotation omitted)).

Plaintiffs Hayat and Palwasha, citizens of New York, operate a logistics company, Digital Frontline Inc., that provides dispatch services to truck owners and operators. Second Amended Compl. ("SAC") ¶¶ 12, 24, ECF No. 31 (Sep. 20, 2024); SAC Ex. B at 44–45.[1] Sher, a citizen of Michigan, is the owner of Mikey's Holdings Inc., which is located in Michigan. SAC ¶¶ 13–15. ArcBest is a freight and logistics solutions provider, registered in Arkansas, and is the parent company of Panther, a truck dispatch company registered in Ohio. *Id.* ¶¶ 16–17, 28–29. Expediter is a truck leasing company registered in Mississippi. *Id.* ¶¶ 18, 25.

On July 21, 2023, Hayat attended the Expedite Expo ("Expo") in Fort Wayne,

---

[1] Unless otherwise noted, all page references are to the pagination provided by the Electronic Case Filing system.

Indiana, a trucking conference sponsored by Expediter and Panther. *Id.* ¶¶ 43–45. The Expo was intended to connect investors and trucking industry partners, as well as promote Expediter's services. *Id.* At the Expo, Hayat was approached by Roger, an exhibitor from Expediter's booth, who told Hayat that a representative from Expediter would reach out to him after the conference to finalize a truck purchase under a "no money down" arrangement. *Id.* ¶ 50. Promotional materials at the Expo similarly advertised that Expediter offered no money down, flexible financing options for leasing trucks. *Id.* ¶ 46. Roger also presented Hayat with a strategic plan for leasing a truck once a month to build a fleet of thirty trucks within the next two years. *Id.* ¶ 51; SAC Ex. A at 39–42.

After the Expo, Hayat conferred with Palwasha about these opportunities, and they agreed to allocate the necessary funds to move forward with the truck purchases from Expediter. SAC ¶ 53. A sales team from Expediter contacted them with the opportunity to lease two trucks, for which Plaintiffs made a 10% down payment. *Id.* ¶¶ 55–57. A copy of the purchase order is attached to the SAC, which indicates "DIGITAL FRONTLINE INC" as the Buyer, with the $18,760.00 down payment being wired from Digital Frontline's bank account. SAC Ex. B at 44–45. The attachment also contains specifications and photos of the trucks. *Id.* at 46–61.

Hayat was also introduced to Sher at the Expo, whom officials from Panther lauded as an "established fleet owner" with "excellent fleet management skills." SAC ¶¶ 65, 69. One of the officials stated that in the two years prior, Sher had grown his fleet from one to twenty trucks. *Id.* ¶ 71. Hayat invited Sher to dinner and began

discussing potential significant investments into Sher and his company, Mikey's Holdings. *Id.* ¶¶ 78–79. Sher presented a plan for Hayat to invest $250,000 into various projects, which were expected to generate over $6 million in just one year. *Id.* ¶¶ 79–84. Hayat "thoroughly assessed the investment opportunity" based on Sher's plan as well as the representations made by Panther officials at the Expo, and decided to invest in Mikey's Holdings. *Id.* ¶¶ 85–86.

On August 12, 2023, Hayat visited Sher in Dearborn, Michigan to survey the operations at Mikey's Holdings. *Id.* ¶¶ 104–05. He observed that the company was "well established, with 20 trucks running, employees on duty, and business that was well established and charming, as [Sher had] stated." *Id.* ¶ 105. About two weeks later, Hayat and Sher signed a contract, in which Hayat agreed to transfer to Sher $150,000 for a project that purportedly required immediate funds. *Id.* ¶¶ 87–89. A copy of that contract is attached to the SAC. SAC Ex. C at 63–65. From then on, Sher regularly told Hayat that the project was ready to begin and to have the funds ready, but after three months since the Expo, no project had been launched pursuant to the agreement. SAC ¶¶ 90–92.

On October 10, 2023, Hayat and Sher entered into a new contract based on a project proposed by Sher (the "DoD Contract"). *Id.* ¶ 93. The DoD Contract arranged for Hayat to pay Sher $12,000 for Hayat to become a 50% partner for three trucks owned by Sher and dispatched by Panther. *Id.* ¶¶ 95–96. The contract also included financial projections, with weekly expenses estimated to be "approximately $7,600 per truck" and an estimated "average weekly revenue ranging from $10,600 to

$10,800." *Id.* ¶ 96. A copy of the DoD Contract is also attached to the SAC. SAC Ex. D at 70–71.

Sher failed to deliver on the profits as projected in the DoD Contract. SAC ¶¶ 109–11. During this period, Sher also used Hayat's credit card to make various purchases, including insurance and truck rental fees that were allegedly on behalf of a different company, Next Mile Logistics. *Id.* ¶¶ 101–03. And on November 2, 2023, Sher texted Hayat requesting a personal loan of $14,000 because Sher's Corvette had been totaled in a car accident. *Id.* ¶ 107. Following this incident, Hayat made another trip to Michigan to visit Mikey's Holdings. *Id.* ¶ 108. Hayat discovered that "[Sher]'s business had practically disappeared." *Id.* All of Sher's trucks had been confiscated by Expediter, his staff had been laid off, and Sher "declared that Mikey's Holdings had gone out of business." *Id.*

## II.    Procedural History

Hayat filed the instant action against Sher, Mikey's Holdings, ArcBest, and Panther in the Supreme Court of New York, Queens County, on February 7, 2024. ECF No. 1-1. ArcBest and Panther successfully removed the case to this Court on March 8, 2024. ECF No. 1. At the initial conference, Hayat appeared *pro se* and requested leave to amend, which was granted. ECF No. 16. An amended complaint was filed on May 8, 2024. ECF No. 20. After an order to show cause why the Court should not remand the action for lack of subject matter jurisdiction, *see* Order dated May 21, 2024, Hayat filed a second amended complaint on September 20, 2024, this time with Palwasha as a co-plaintiff. SAC, ECF No. 31. The second amended

complaint also added Expediter as a defendant. *Id.*

ArcBest and Panther filed a motion to dismiss. ECF No. 42. Expediter filed an answer, ECF No. 46, then filed a motion for judgment on the pleadings, ECF No. 54. After Sher failed to file an Answer or find representation for Mikey's Holdings, Plaintiffs moved for default judgment against them. ECF No. 50. On April 9, 2025, the Court denied that motion because Plaintiffs failed to provide proof of service and correspondingly dismissed the claims against Sher and Mikey's Holdings without prejudice. Order Adopting R. & R. re Pl.'s Mot. for Default J. Only the motions from ArcBest, Panther, and Expediter are currently before this Court.

## **DISCUSSION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are diverse in citizenship and the alleged amount in controversy is over $75,000.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though the district court must accept a plaintiff's well-pled factual allegations as true, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. The standard of review for a motion for judgment on the pleadings is the same for a motion to dismiss under § 12(b)(6). *See Lynch*, 952 F.3d at 75.

Additionally, because the Plaintiffs are *pro se*, the Court construes their pleadings liberally. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *Pro se* complaints

are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

The Court begins with a preliminary observation that Plaintiffs' grievances are primarily directed toward their dealings with Sher and the various investments that they made into Mikey's Holdings, on which they saw no return. Because the claims against Sher and Mikey's Holdings have been dismissed, however, much of the SAC is misdirected. It fails to show how ArcBest, Panther, or Expediter was responsible for the losses suffered by the Plaintiffs, even on a liberal reading of the allegations. Plaintiffs therefore fail to state a claim for any of the SAC's causes of action against these defendants. Accordingly, both ArcBest and Panther's motion to dismiss and Expediter's motion for judgment on the pleadings are granted.

I.   **Claims as to ArcBest and Panther**

A. <u>Fraud or Mistake</u>

Plaintiffs first enumerate a variety of causes of action related to fraud or mistake, including "fraud," "fraudulent misrepresentation," "conspiracy to defraud," "negligent misrepresentation," and "innocent misrepresentation." *See, e.g.*, SAC ¶¶ 41, 125–34, 139–45, 156–61. All such claims require a plaintiff to show "misrepresentation of a material fact, falsity of that representation, . . . reliance, and damages." *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir. 1980); *see W. Side Fed. Savs. & Loan Ass'n of N.Y. City v. Hirschfeld*, 101 A.D.2d 380, 384 (1984) ("If we subtract from fraud the element of scienter, the remainder constitutes the tort of

innocent misrepresentation."). Further, under Federal Rule of Civil Procedure 9(b), these claims are subject to a heightened pleading standard and must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For example, allegations of fraud "which fail to specify the time, speaker, and . . . the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). Plaintiffs fail to state a valid claim for any of their fraud-related causes of action.

Though the SAC at various points refers to "misrepresentations" made by Defendants, few statements from Panther or ArcBest are identified, let alone accompanied by the level of detail necessitated by Rule 9(b). The only specific allegations here involve the positive evaluations of Sher given to Hayat at the Expo, most notably the statement from the Panther officials who praised "[Sher]'s excellent fleet management skills and his status as an established fleet owner," noting that "during the two years prior to the EXPO, [Sher] had grown his fleet from one to 20 trucks." SAC ¶¶ 69, 71. Hayat was also shown a video clip, in which one of the officials stated, "[Sher] is a great guy who knows the business very well." *Id.* ¶ 70. Plaintiffs claim that Hayat "relied heavily" on these statements in deciding to invest in Mikey's Holdings, and that these representations later turned out to be false. *Id.* ¶¶ 73, 92.

These representations are not sufficient to establish a claim for fraud. First, on his trip to Mikey's Holdings in August, Hayat personally confirmed that Sher's business "was well established" with "20 trucks running." *Id.* ¶ 105. Indeed,

8

Plaintiffs admit that the Panther officials' comments at the Expo regarding Sher reflected their "honest belief that the foregoing representations were true." *Id.* ¶¶ 140–41. In any case, it is well established that "statements will not form the basis of a fraud claim when they are mere 'puffery' or are opinions as to future events." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994). As the statements attributed to Panther and ArcBest fall into those categories, they are insufficient to state a claim under any of Plaintiffs' fraud-related causes of action.

### B. Breach of Contract

Plaintiffs next raise a claim for breach of contract. In New York, the four elements of a breach of contract claim are: "(1) the existence of a contract between [the plaintiff] and [the] defendant; (2) performance of the plaintiff's obligation under the contract; (3) breach of the contract by [the] defendant; and (4) damages to the plaintiff caused by [the] defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

Plaintiffs fail to allege facts showing the existence of an enforceable contract against ArcBest or Panther. The SAC mentions only two contracts: the $150,000 project signed in August 2023, and the DoD Contract signed in October 2023. *See* SAC ¶¶ 87–89, 93–96; SAC Exs. C, D. Hayat, Sher, and Mikey's Holdings are the only parties to both agreements. *See* SAC Exs. C, D. As such, neither constitutes a valid contract between the Plaintiffs and ArcBest/Panther.

To be sure, Plaintiffs vaguely characterize Panther and ArcBest as being involved in the implementation of the DoD Contract, noting that the trucks in which

Hayat became a 50% partner were "dispatched by Panther," and that "ARCBEST was tasked with providing payroll and accounting services to [Sher] on behalf of Mikey's Holdings as outlined in the agreement." SAC ¶ 95. But not only are ArcBest and Panther not signatories to this contract, neither company is ever mentioned in the text of either of the two contracts appended to the SAC. *See* SAC Exs. C, D. "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).

Moreover, even if the Court were to accept Plaintiffs' assertions about Panther and ArcBest's involvement in the venture outlined in the DoD contract, the SAC does not allege that Panther or ArcBest failed to comply with the aforementioned dispatching or accounting services. Alternatively, in the section outlining this cause of action, Plaintiffs allege that "Defendants failed to fulfill their obligation to arrange drivers for the trucks leased from Expedite[r] Services." SAC ¶ 180. However, nowhere in the SAC does Plaintiff allege facts showing that such an obligation was imposed, let alone through a valid contract. Indeed, the only mention of recruiting drivers is in the attached contract with Sher, which indicates that "[b]oth parties" — in other words, Hayat and Sher — "share the responsibility of recruiting drivers for [the project]." SAC Ex. C at 64.

C. Unjust Enrichment

Plaintiffs also fail to state a claim for unjust enrichment. In New York, a plaintiff alleging unjust enrichment must show that "(1) defendant was enriched, (2)

at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Plaintiffs do not anywhere allege facts showing these elements, merely asserting that "[t]he acts and/or omissions alleged [therein] constitute Unjust Enrichment." SAC ¶ 136. Namely, nowhere in the SAC do Plaintiffs claim that Panther or ArcBest was enriched, or otherwise benefitted from, the incidents related to their alleged losses.

D. Conversion

Finally, Plaintiffs raise a claim of conversion against ArcBest and Panther. SAC at 28. "Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997) (internal quotation omitted). Once again, Plaintiffs do not allege any facts specifying what property of theirs was improperly used, let alone that ArcBest or Panther exercised control or dominion over such property.

As Plaintiffs have failed to state any valid claim for relief against ArcBest and Panther, the Court grants their motion to dismiss in its entirety.[2]

II. Claims as to Expediter

A. Breach of Contract

---

[2] Because the Court dismisses the Second Amended Complaint ("SAC") as to ArcBest and Panther for failure to state a claim, it does not address ArcBest and Panther's argument that the SAC should be dismissed for failure to join Next Mile Logistics as a necessary party. *See* ArcBest & Panther Mot. to Dismiss 12–13, ECF No. 31-1.

11

Plaintiffs raise a claim for breach of contract against Expediter. As with Plaintiffs' contract claim against ArcBest and Panther, it is difficult to parse Plaintiffs' allegations here because they do not clearly state what constituted the relevant contract they allegedly entered into with Expediter. The Court construes the pleadings liberally and, in context, assumes that Plaintiffs are alleging that Expediter violated the leasing agreement for the two trucks purchased by Plaintiffs.

However, it is clear from the invoice attached to the SAC that Plaintiffs are not parties to the lease agreement. First, although "Palwasha Masudi" is listed as a contact, the invoice lists "DIGITAL FRONTLINE INC" along with the company address under "Buyer Name/Address." SAC Ex. B at 44. The associated wire transfer further notes that the funds for the down payment for the trucks were transferred out of a bank account attributed to "DIGITAL FRONTLINE INC." *Id.* at 45. The remaining documentation simply provides specifications and photos of the trucks being leased, and neither Hayat nor Palwasha is mentioned by name apart from the aforementioned contact listing. *Id.* at 46–61. Thus, it is clear that Digital Frontline is the party to the leasing agreement with Expediter, not Plaintiffs. And the *pro se* Plaintiffs cannot proceed with those claims on Digital Frontline's behalf because it is well established that federal courts "do[] not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Counsel*, 506 U.S. 194, 202 (1993).

Moreover, even if the individual Plaintiffs were a party to this contract, there

is no indication that the lease agreement imposes any obligations other than the provision of the trucks in exchange for the funds — something that Plaintiffs never allege that Expediter failed to do.

Alternatively, Plaintiffs may be alleging that the promotional materials and the statements made by Roger promising a "no money down" arrangement constituted a contract that Expediter later violated by requiring a 10% down payment. *See* SEC ¶¶ 46, 50. For example, the SAC refers to Expediter's failure to "deliver proper and complete documentation regarding the terms of the lease agreements, the maintenance and operation of the trucks, and any charges or fees associated with the lease, contrary to what was promised in the Agreements." SAC ¶ 179. This claim also fails, however, as courts have held that advertisements are "mere notices and solicitations for offers which create no power of acceptance in the recipient." *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 123 (S.D.N.Y. 1999) (quoting *Mesaros v. United States*, 845 F.2d 1576, 1580 (Fed. Cir. 1988)). Expediter was thereby not obligated to offer, much less enter into, a no money down contract merely because their advertisements suggested that such agreements would be available.

### B. Equal Credit Opportunity Act

Plaintiffs next raise claims against Expediter under two different statutes, neither of which is applicable based on the facts alleged. First, they claim that Expediter violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C.A. § 1691 *et seq*. SAC ¶ 34. A plaintiff suing under the ECOA has the initial burden of showing that "(1) [she] was a member of a protected class, (2) [she] applied for credit from [the]

defendant, (3) [she] was qualified for credit but [the] defendant denied her credit . . . and (4) [the] defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Dorce v. Toyota Fin. Servs.*, No. 19-CV-6008 (LDH) (RER), 2020 WL 6746838, at *3 (E.D.N.Y. Nov. 17, 2020) (alterations in original) (internal quotation omitted). Plaintiffs here do not anywhere state or claim that they are a member of a protected class, let alone to which protected class they might belong. They fail to do so even in their opposition to Expediter's motion. *See* ECF No. 59. Plaintiffs therefore have not stated a claim under the ECOA.

### C. Truth in Lending Act

Next, Plaintiffs claim that Expediter violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq. See* SAC ¶ 6. TILA regulates consumer leases, defined as "a *contract* . . . for the use of personal property by a natural person . . . primarily for *personal, family, or household* purposes . . . . Such term does not include a lease for agricultural, *business, or commercial* purposes." 15 U.S.C. § 1667(1) (emphases added). But as just discussed, Plaintiffs are not a party to the leasing agreement with Expediter. For the same reasons that Plaintiffs fail to state a claim for breach of contract, they cannot state a claim under TILA. Furthermore, TILA explicitly exempts commercial leases; thus, the statute would be inapplicable even if Plaintiffs had a contract with Expediter.

### D. Other Potential Claims

Though Plaintiffs only enumerated the aforementioned three causes of action

against Expediter in their SAC, the Court construes their allegations liberally and reads in several other potential causes of action based on Expediter's purportedly misleading statements at the Expo as to the availability of a flexible financing offer.

First, Plaintiffs at various points refer to a potential violation of the Consumer Credit Protection Act ("CCPA"). *See, e.g.*, SAC ¶¶ 30, 35. However, Plaintiffs are not "consumers" as defined by the relevant statute. The CCPA covers "terms of leases of personal property for *personal, family, or household* purposes," 15 U.S.C. § 1601(b) (emphasis added), and specifically excludes "[c]redit transactions involving extensions of credit primarily for *business, commercial*, or agricultural purposes," *id.* § 1603(1) (emphasis added). Plaintiffs' potential credit transactions with Expediter therefore lie outside the CCPA's protections.

Similarly, Plaintiffs allude to the fact that Expediter's conduct may constitute deceptive practices in violation of *state* consumer protection laws, *see* SAC ¶¶ 6, 36, but such a claim, too, lacks merit. To sue under New York's Deceptive Trade Practices Act, "the transaction in which the consumer is deceived must occur in New York." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002). The practices that Plaintiffs allege were deceptive occurred at the Expo, which took place in Indiana. SAC ¶ 66.

Finally, Expediter construes Plaintiffs' allegations regarding the statements at the Expo as potentially raising a claim for fraud. *See* Expediter Mot. at 11–13. As already discussed, however, "[a] prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud." *Magnacoustics, Inc. v.*

15

*Integrated Computer Solutions, Inc.*, No. 17-CV-4967, 2020 WL 4041310, at *5 (E.D.N.Y. July 17, 2020) (internal quotation omitted). In particular, "alleged representations as to the availability of financing are non-actionable expressions of future expectations, not statements concerning an existing fact." *88 Blue Corp. v. Staten Builders Co.*, 176 A.D.2d 536, 538 (N.Y. App. Div. 1991).

Having found that Plaintiffs fail to state any of their claims for relief against Expediter, the Court grants Expediter's motion for judgment on the pleadings.

### III. Leave to Amend

Although Plaintiffs have not requested leave to amend, courts generally "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). However, leave to amend can be denied "when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006). "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (quoting *Cuoco*, 222 F.3d at 112)).

Even when construed liberally, the defects with Plaintiffs' claims against the remaining defendants are substantive ones. None of the SAC's allegations, even generously construed, suggest that they have viable claims against ArcBest, Panther, or Expediter. Most of Plaintiffs' causes of action are inapplicable on the face of the

relevant statutes or case law, and their fraud and contract claims appear to relate entirely to other defendants — Sher and Mikey's Holdings — who were dismissed from the case *without* prejudice. Plaintiffs have also, either jointly or as individuals, filed at least five other *pro se* actions in various courts, including two in this district.[3] *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude [given to a pro se plaintiff] may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented."). Finally, this Court has already twice granted Plaintiffs leave to amend, and their opposition papers do not otherwise indicate how their pleadings could be successfully amended. Given these factors, this Court finds that granting Plaintiffs leave to file a Third Amended Complaint against ArcBest, Panther, and Expediter would be futile, and declines to give Plaintiffs leave to amend *sua sponte*.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss and motion for judgment on the pleadings. The Second Amended Complaint is hereby dismissed with prejudice.

SO ORDERED.

---

[3] *See Masudi v. Maximo Couture, Inc.*, 20015/10, slip op. (N.Y. Sup. Ct. Mar. 27, 2013); *Masudi v. Ford Motor Credit Co.*, No. 07-CV-1082 (CBA) (LB), 2008 WL 2944643 (E.D.N.Y. July 31, 2008); *Masudi v. Brady Cargo Servs., Inc.*, No. 12-CV-2391 (DLI), 2014 WL 4416502 (E.D.N.Y. Sept. 8, 2014); *Masudi v. Uniform Warehouse, Inc.*, No. 25-CV-15919 (D.N.J. filed Sep. 24, 2025); *Masudi v. Uniform Warehouse*, No. 0701355 (N.Y. Sup. Ct. filed Feb. 8, 2025).

<u>*/s/ Nina R. Morrison*</u>  
NINA R. MORRISON  
United States District Judge

Dated:     November 21, 2025  
              Brooklyn, New York